IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

\*　　\*　　\*　　\*　　\*

RANDY DEWAYNE PITTMAN \*

v. \* Case No.:

FEDERAL BUREAU OF \*
PRISONS; L.B. KELLY - \* _____
WARDEN FCI BUTNER \* Jury Demand

COMPLAINT AND MOTION FOR RESTRAING
ORDER AND EMERGENCY TEMPORARY INJUNCTION

Introduction:

　　　Between July 2019 and June 2021 Pittman resided in Alabama. Pittman's Primary Care Provider ("PCP") is Dr. Rommel Go, M.D. ("Dr. Go") who is the principle of Go Medical Group. Dr. Go is an addiction medication specialist and certified to prescribe medications designed for use in Medication-Assisted Treatment ("MAT"). For approximately two (2) years Pittman received Suboxone 24mg daily to treat an Opioid Use Disorder ("OUD") diagnosis. On June 25, 2021 Pittman was arrested.

　　　On 02/02/2022 Pittman entered the custody of the Federal Bureau of Prisons ("BOP") at FMC Fort Worth. While at FMC Fort Worth Pittman was "cleared" to begin MAT therapy, using Suboxone. Of course the BOP never had any real expectation of

treating Pittman's OUD diagnosis, using Suboxone.

Shortly after Pittman was cleared to begin treatment he was transferred from FMC Fort Worth. This is a tool the BOP is known for when an inmate has a legitimate issue and the BOP does not want to address a situation.

On 03/15/2022 Pittman was removed from BOP custody and placed in U.S. Marshal Service ("USMS") custody at the Santa Rita Jail, in Dublin, California. Between 03/31/2022 and 11/17/2022 Pittman remained at this facility.

Two (2) days after Pittman arrived he was prescribed, and administered, MAT medication. The MAT therapy continued until Pittman left the facility in California.

On 12/02/2022 Pittman re-entered BOP custody, at USP Atlanta. While at USP Atlanta Pittman was seen by Dr. James Winston, M.D. ("Dr. Winston"). Dr. Winston told Pittman he would begin MAT therapy, using Suboxone, on 12/23/2022. As the Court will soon learn this pattern of behavior is the BOP's mode of operation ("m/o"). On 12/19/2022 the BOP transferred Pittman to FCI Edgefield.

Between 12/19/2022 and 04/26/2023 Pittman was, again, screened and evaluated for MAT therapy. The BOP obtained all medical records from Dr. Go. On 04/18/2023 Pittman was told he would begin MAT therapy, using Suboxone, on 04/30/2023. This may come as no surprise but Pittman was

transferred from FCI Edgefield on 04/26/2023.

On 05/02/2023 Pittman arrived at FCI Butner II. Immediately Pittman sought to receive MAT therapy, using Suboxone, but, as the Court can clearly see, the BOP remains defiant in treating patients for OUD, using Suboxone. Between 05/02/2023 and 07/03/2023 Pittman waited on medical staff to provide him treatment. On 07/03/2023 Pittman filed an Informal Resolution Request demanding MAT therapy, using Suboxone.

On 07/17/2023 Unit Manager K. Ware give Pittman a response (See Exhibit "A") that said that he was "on the list" and to anticipate a follow up to occur in the next 30-60 days.

On 09/14/2023 Pittman was finally seen by Dr. Draude — the MAT Point of Contact. Because the BOP remains defiant in prescribing and administering Suboxone, Dr. Draude attempted to offer Pittman other medications the BOP "prefers" to use to treat OUD.

At the conclusion of Pittman's consultation with Dr. Draude it was clear the BOP will not offer Pittman MAT therapy, using Suboxone. Dr. Draude told Pittman he will need a court order to get "Suboxone." Dr. Draude told Pittman he "could get on Suboxone the last 30 days" of his sentence.

Law and Analysis:

Pittman is a federal prisoner in BOP custody. Pittman is incarcerated at FCI Butner II, in Butner, North Carolina. Pittman is suing a federal agency therefore jurisdiction and venue are proper.

Argument:

All merits of this case have already been litigated. In Crews v. Sawyer, 19-2541-JWB, 2020 U.S. Dist. LEXIS 55666 D. Kan. Mar. 31, 2020 ("The Case") the Plaintiff was committed to BOP custody on 09/04/2019. The BOP refused to treat his OUD diagnosis, using Suboxone. On 09/11/2019 the Plaintiff filed The Case.

Like Pittman, the Plaintiff in The Case did request an emergency injunction after 16:00 five (5) days after his filing. This Court should also be reminded the Plaintiff in The Case did not exhaust his administrative remedies pursuant the Prisoner Litigation Reform Act ("PLRA"). So, when the U.S. Attorney cites the PLRA, Pittman shows that there is already a precedent set in this case.

In The Case the BOP's Medical Director — Dr. Jeffrey D. Allen, M.D. — signed a Declaration under penalty of perjury that stated "so long as it remains medically necessary and appropriate, Plaintiff will be able to remain on MAT therapy with Suboxone during his entire period of incarceration with the BOP." (Doc 37-3 at 5.)

Pursuant the BOP's Patient Care Manual (Program Statement 6031.04) the BOP gives clinicians discretion to provide necessary care. According to Dr. Allen, it "does not preclude long-term treatment of Opioid Use Disorder." Finally, Dr. Allen issued medical guidance stating the BOP is "expanding its MAT Program to include all FDA approved MAT medications currently available in the United States, including Suboxone."

Pursuant the First Step Act, Pub. L. 115-391, 132 Stat. 5193, 5244 (2018) the BOP is required to provide treatment for OUD which will include access to MAT.

Finally Dr. Allen's guidance provides that offenders who enter the BOP with prescribed MAT treatment plans... "will be continued on those plans if clinically appropriate." (Id. at 5-6.)

On 02/02/2022 Pittman did enter the BOP "with prescribed MAT treatment plans." On 12/02/2022 Pittman did re-enter the BOP "with prescribed MAT treatment plans."

Between July 2019 and June 2021 Pittman used Suboxone 24mg daily for OUD as a MAT medication. As it is clear the BOP's MAT Program includes "all FDA approved MAT medications currently available in the United States, including Suboxone."

At this time, Dr. Draude has attempted to treat Pittman's OUD with Vivitrol and Sublocade. It is clearly stated in Pittman's medical records that

he has adverse side effects or allergic reactions to Vivitrol and Sublocade. When Pittman attempted to use Sublocade he experienced extreme bladder pain and frequent urination. These are listed as rare side effects of Sublocade.

The bottom line is that Pittman successfully treated OUD with Suboxone for approximately two (2) years, in the community. Pittman successfully treated OUD with Suboxone for approximately seven (7) months while in USMS custody at the Santa Rita Jail.

If we are being honest, the only reason the BOP is defiant in prescribing Suboxone is because some inmates have abused their prescription and sold the medication to other inmates. Pittman has never had any such problem.

Pittman's OUD diagnosis is current. Pittman is certainly in need of MAT therapy. Pittman has been "cleared" to begin MAT therapy. Suboxone is the medication Pittman has successfully used in the past. The active ingredient in both Suboxone and in Sublocade is buprenorphine. The BOP simply does not like Suboxone because it is delivered via sublingual strips whereas Sublocade is delivered via a 300mg injection once per month.

Because Pittman has a current OUD diagnosis and the BOP is authorized to use Suboxone and Pittman has been "cleared" multiple times to begin MAT therapy, it is clear there is a medical necessity for Pittman to receive MAT therapy, using

Suboxone.

Just as happened in The Case it is clear that once this Complaint is filed, the BOP will concede that Pittman is entitled to treatment and will begin his MAT therapy. Pittman can name no less than 12 other offenders in the BOP who receive Suboxone — not Sublocade — to treat OUD.

Conclusion:

This Court should immediately consider this action and require immediate response by the Government. This Court should issue a restraining order to prohibit the defendant from denying Pittman continuation of MAT therapy, using Suboxone.

All facts and evidence are in favor of Pittman and the BOP has absolutely no means of disputing the facts or evidence in this Complaint.

Pittman has previously been treated for OUD, using Suboxone. Pittman's OUD diagnosis is current and considered "severe" by BOP clinicians. Many other federal prisoners — in BOP custody — are treated for OUD with Suboxone.

As previously mentioned in The Case the BOP's Medical Director has already gone on the record and, as far as Pittman is concerned, this dispute was already litigated in The Case.

Prayer for Relief:

Pittman respectfully prays unto this Court for a restraining order after 16:00 on Monday October 02, 2023 prohibiting the BOP from denying him continuation of MAT therapy, using Suboxone. In addition, Pittman prays unto this Court for an order granting him an emergency injunction that will require the BOP to continue MAT therapy, using Suboxone, during the pendancy of this case.

Pittman finally prays unto this Court for a Final Order requiring the BOP to treat his OUD diagnosis consistent with Dr. Allen's guidance for the duration of his incarceration; which is by administering Suboxone 24mg daily just as he received from Dr. Go.

Respectfully submitted, September 19, 2023.

By: _____

Randy D. Pittman, Pro se
Reg. No. 49695-177
FCI Butner II
P.O. Box 1500
Butner, NC 27509-4500

Page 08 of 08